UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X    Case No.
JEFFREY STRUGSS,

           Plaintiff

-against-

THE CITY OF NEW YORK, SERGEANT
WONG, Tax ID 927821 (Shield #
Unknown, 30th Pct.), DEPUTY INSPECTOR
PETER BARTOSZEK, Commanding Officer,
79th Precinct, SERGEANT O'CONNOR,
Integrity Control Officer, LIEUTENANT
DeMAIO, 79th Precinct,

           Defendants
-------------------------------------------------X

CV 12-4396

SUMMONS ISSUED
GLASSER J
POLLAK, M.J

**COMPLAINT**

    Plaintiff, JEFFREY STRUGSS, by his attorneys, Law Offices of K.C. Okoli, P.C., complaining of the defendants, alleges as follows:

**JURISDICTION AND VENUE**

1.     Jurisdiction is founded upon the existence of a Federal Question.

2.     This is an action for injunctive relief and money damages. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., 42 U.S.C. §§1981, 1983 and 1985.

3.     The jurisdiction of the Court is invoked to secure the protection and redress the deprivation of rights guaranteed to the plaintiff under the First, Fourth, Eight and Fourteenth Amendments to the Constitution of the United States.

4.     The jurisdiction of the Court over these claims is founded on 28 U.S.C. §§1331 and 1343.

1

5. The Court has supplemental jurisdiction over the related causes of action asserted under the Administrative Code of the City of New York, §8-107(1), (7) and (13).

6. Venue is proper in this district based upon the fact that a substantial part of the events and incidents which give rise to the plaintiff's claims occurred within the district.

## PARTIES

7. Plaintiff is an African American male who is employed in the New York City Police Department ("NYPD").

8. Plaintiff began his career as a police officer with the NYPD on or about July 1, 1998.

9. At all times material to this action, plaintiff was a resident of Richmond County, City and State of New York.

10. Upon information and belief, at all times material to this action, The City of New York ("City") is a municipal corporation organized and existing under and by virtue of the laws of the State of New York.

11. The City maintains the NYPD, as a police department and is the employer of the law enforcement officers within the NYPD.

12. At all times material to this action, defendant Sergeant Wong ("Wong") was a police sergeant within the NYPD stationed at the 30th Precinct.

13. In May/June 2012, Deputy Inspector Peter Bartoszek ("Bartoszek") was the Commanding Officer of the 79th Precinct where plaintiff was assigned as a police officer.

14. In May/June 2012, Sergeant O'CONNOR ("O'CONNOR") was the Integrity Control Officer whose responsibility, upon information and belief, extended to the investigation of such incidents as to who placed the "arrest evidence" under the plaintiff's locker at the 79th Precinct.

15. In May/June 2012, Lieutenant DeMaio ("DeMaio"), was the supervisory officer

responsible for integrity control at the 79th Precinct who, upon information and belief, was the supervisor of O'CONNOR.

## ALLEGATIONS

16. Beginning about 2002 to the present time, plaintiff has had issues with one Jeanine Crawford, the mother of plaintiff's daughter, Joya.

17. The issues which plaintiff has with Ms. Crawford relates principally to child support and visitation issues, among others.

18. The defendants are aware of the ongoing issues concerning plaintiff and Ms. Crawford.

19. Complaints have been filed at police precincts in New York City concerning Struggs/Crawford issues, transfer of custody had taken place at police precincts between plaintiff and Ms. Crawford, and documents have been generated by the defendants arising from the plaintiff's relationship with Ms. Crawford.

20. In connection with plaintiff's issues with Ms. Crawford, plaintiff had filed numerous complaints of criminal wrongdoing against certain officials of the Family Court, New York State DCSE and New York Child Support Office in New York City from 2002 to 2012.

21. In his capacity as a citizen, plaintiff has the constitutional right to file said complaints against the aforesaid officials.

22. In 2003, plaintiff lost ten (10) vacation days after plaintiff was tried in connection with his role in the service of process upon Ms. Crawford when plaintiff discovered that, instead of using the child care money paid to her by plaintiff for a child care provider as ordered by the Family Court, Ms. Crawford was using the money for herself.

23. In December 2002, plaintiff and his then fiancée went to the 32nd Precinct in connection with the transfer of plaintiff's daughter, Joya, for visitation in accordance with a court order.

3

24.While within the premises of the 32nd Precinct, Ms. Crawford and others assaulted plaintiff's then fiancée, and when plaintiff demanded action from the officers at the precinct for the outrage, plaintiff and his fiancée were threatened, assaulted and detained by certain police officers at the 32nd Precinct.

25.In 2004, plaintiff and his wife commenced a lawsuit in the United States District Court for the Southern District of New York, against the City and the police officers who were involved in the December 2002 incident against plaintiff at the 32nd Precinct. That lawsuit was *Struggs v. City of New York*, 04 CV-2288.

26.In 2004, while the aforesaid lawsuit was pending and plaintiff was still protesting the conduct of officials of the Family Court, the Manhattan North (NYPD) began investigating plaintiff for various incidents.

27.During the aforesaid investigation, one Sergeant Ferrina told plaintiff that if plaintiff continued to make domestic incident complaints against Ms. Crawford, plaintiff could be in a lot of trouble. Plaintiff considered Sergeant Ferrina's statement an act of intimidation and retaliation for plaintiff's expression of his rights under the First Amendment.

28.Subsequently, plaintiff and his wife discontinued *Struggs v. City of New York*, 04 CV-2288, with prejudice.

29.In 2008, plaintiff continued to file numerous complaints with New York City, New York State and federal agencies with regard to what plaintiff believed to be the corrupt acts and practices of officials of the Manhattan Family Court, NYS DCSE and NYS Child Support Office.

30.In or about April 2008, one Sergeant George Ruppel, former Integrity Control Officer at the 79th Precinct, informed plaintiff that letters which plaintiff wrote got people in trouble and upset some people. Plaintiff believes that Sergeant Ruppel was referring to the aforesaid complaints by the plaintiff as well as some internal complaints which plaintiff filed with the NYPD.

31. On or about September 5, 2008, plaintiff's Commanding Officer at the 79th Precinct, Deputy Inspector Donald Lyons, made reference to domestic incident complaints filed in August 2008, by the plaintiff against Ms. Crawford and some officials of the Manhattan Family Court.

32. The reference by Deputy Inspector Lyons to these complaints which were not filed against anyone at the NYPD, and which plaintiff never gave to Deputy Inspector Lyons, made plaintiff feel intimidated and anxious for his job as a police officer.

33. Said reference also confirmed to plaintiff what plaintiff had always believed i.e. that the officials of the Manhattan Family Court against whom plaintiff was filing complaints were in communication with plaintiff's superiors at NYPD, and were using his supervisors to retaliate against him for exercising his First Amendment rights.

34. Between 2005 and 2010, plaintiff was subjected to discipline more than normal, including being disciplined for failing to include the area code of his telephone number on a document. These acts were intimidating and were continuing retaliation against plaintiff for exercising his First Amendment rights.

35. On or about April 16, 2010, Wong prepared a Domestic Incident Report ("DIR") concerning the plaintiff in which he falsified facts against plaintiff. Said false DIR report is directly and partly responsible for some serious problems which plaintiff has had since 2010. These problems include the fact that plaintiff has not been able to see his daughter, Joya, since 2010, and has lost thousands of dollars in connection with the custody of her daughter.

36. In or about April 2012, plaintiff drove his wife's car to work at the 79th Precinct, and after he left work on the day in question, plaintiff discovered that seven (7) screws had been driven into the tires of his wife's vehicle.

37. Plaintiff believes that the screws were driven into the car tires while the car was parked at the parking lot where officers normally parked their cars when on duty at the 79th Precinct.

38., On or about April 4, 2012, plaintiff filed a complaint of wrongdoing against the New York State Office of Temporary and Disability Assistance with the United States Department of Justice ("DOJ").

39. Plaintiff believes that he has First Amendment constitutional right to file these complaints.

40. On or about May 6, 2012, "arrest evidence", including a firearm which were placed by unknown persons, were discovered under the plaintiff's locker at the 79th Precinct. Prior to the discovery of these items, plaintiff had never possessed these items nor had plaintiff ever seen them.

41. Some officers at the 79th Precinct witnessed the discovery of these items, and plaintiff duly reported the discovery up the chain of command.

42. Only employees assigned to the 79th Precinct have access to the plaintiff's locker area; it is obvious that the person(s) who placed the aforesaid items under the plaintiff's locker are not civilians but police officers.

43. Up until this day, plaintiff is not aware any actions taken by the defendants to discover the person or persons who place the incriminating items under plaintiff's locker.

44. Plaintiff believes that the foregoing actions and inaction by the defendants were retaliatory acts aimed at intimidating plaintiff and falsely incriminating plaintiff in criminal wrongdoing due to plaintiff's participation in protected activity.

45. If the perpetrators had succeeded in falsely incriminating plaintiff in with the "arrest evidence", it could lead to plaintiff being dismissed from the NYPD.

46. By their inaction over the "arrest evidence", defendants have indeed succeeded in intimidating plaintiff and causing him severe anxiety over his job security, and made plaintiff now very suspicious and not knowing who to trust at work.

47. Plaintiff's job as a police officer requires him to trust his professional colleagues, something which is becoming increasingly difficulty in light of the atmosphere and environment

6

which the defendants have created and fostered for the plaintiff.

be subjected to this additional layer of anxiety.

48. Upon information and belief, no proper investigation was conducted by the defendants to determine the persons who attempted to falsely incriminate plaintiff by planting the "arrest evidence" under the plaintiff's locker.

49. Upon information and belief, a proper basic investigation which would include testing the "arrest evidence" for fingerprints, and review of any surveillance photos available within the NYPD would have helped identify the persons responsible for placing the incriminating "arrest evidence" under plaintiffs' locker.

50. Such failure in this case is consistent with the pattern and practice of the NYPD when ranking officials choose to protect or shield police officers who engage in wrongdoing from facing punishment or discipline.

51. On or about May 10, 2012, plaintiff filed a complaint for retaliation with the United States Equal Employment Opportunity Commission ("EEOC").

52. On or about May 23, 2012, plaintiff filed a complaint with the U.S. Department of Justice ("DOJ") in which plaintiff sought among other reliefs, the investigation of his case and the New York City Police Department for wrongdoing.

53. On or about June 5, 2012, plaintiff found one Police Officer Salcedo attempting to improperly revoucher property using an old original voucher number, under the name and ID of the plaintiff.

54. Plaintiff protested said attempt by Officer Salcedo and prevented her from doing so.

55. While plaintiff has not received any final response from the DOJ, plaintiff has received from the EEOC, a notice of right to sue dated June 6, 2012.

56. By reason of the foregoing, plaintiff has exhausted his administrative remedies.

57. At all times mentioned herein, the defendants were acting under color of law and

in their capacities of law enforcement officials; the individual defendants were also acting within the scope of their employment.

## CLAIM I: HOSTILE WORK ENVIRONMENT

58. Plaintiff re-alleges each and every allegation from "1" through "57" as if same is specifically set forth herein.

59. Since 2002 to the present, defendants have evinced a pattern of not treating anything concerning plaintiff seriously unless it involved some punishment or discipline for the plaintiff.

60. Both by speech and conduct, since 2002, and more recently, the incident of the May/June 2012 in which "arrest evidence" was planted under plaintiff's locker and the defendants failed to take any serious steps to discover the culprit, the defendants created a hostile work environment for the plaintiff; defendants created a reasonable fear in plaintiff that he could be dismissed anytime from the NYPD based upon falsified evidence.

61. Defendants have attempted to or in fact disciplined plaintiff over the most trivial things as a pretext for racial harassment.

62. This most recent incident has caused plaintiff serious anxiety as to who might want plaintiff to be unjustly fired from the NYPD; plaintiff has also had to face some sleepless nights as a result of the ongoing actions/inaction of the defendants towards plaintiff.

63. No police officer should be made to face the kind of work situation which plaintiff is facing at his workplace.

64. Defendants have singled out plaintiff for the aforesaid treatment which is not meted similarly situated police officers who are not African American.

65. By reason of the foregoing, plaintiff has suffered loss and damage.

## CLAIM II: FIRST AMENDMENT CONTINUING RETALIATION

66. Plaintiff re-alleges each and every allegation from "1" through "65" as if same is specifically set forth herein.

67. Since plaintiff began filing complaints against officials of the Family Court in or about 2002, defendants began retaliating against plaintiff, and the retaliation worsened over the years.

68. This retaliation took an even more sinister turn when plaintiff filed complaints with DOJ and EEOC, in that "arrest evidence" was planted under plaintiff's locker for the obvious purpose of falsely incriminating plaintiff in criminal wrongdoing which has a potential to result in plaintiff's dismissal from the NYPD.

69. The failure to properly investigate the "arrest evidence" incident and the recent "screws in tire" incident has caused plaintiff to fear not only for his job but also for his personal safety.

70. By reason of the foregoing, plaintiff has been subjected to unlawful retaliation and has suffered loss and damage.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff prays for judgment against the defendants as follows:

a) On Claim I, Five Million Dollars ($5,000,000.00), including compensation for mental anguish;

b) On Claim II, Five Million Dollars ($5,000,000.00), including compensation for mental anguish;

c) Punitive damages against the individual defendants;

d) Reasonable attorneys' fees;

e)  Costs;

f)  Other or further relief as this Court shall deem just

proper and equitable.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all issues triable by jury.

Dated: New York, New York
       September 4, 2012

>                                    LAW OFFICES OF K.C. OKOLI, PC
>                                    Attorneys for Plaintiff
>                                    JEFFREY STRUGSS
>                                    330 Seventh Avenue
>                                    15th Floor
>                                    New York, N.Y. 10001
>                                    (212) 564-8152
>
>                                    By: /s/ K.C. Okoli
>                                        K.C. OKOLI (KO7222)

TO:

MICHAEL A. CARDOZO
NYC Law Department
100 Church Street
New York, New York 10007

SERGEANT WONG, Tax ID 927821

DEPUTY INSPECTOR PETER BARTOSZEK

SERGEANT O'CONNOR

LIEUTENANT DeMAIO