UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X     Case No. 12 CV 4396 (ILG)(CLP)
JEFFREY STRUGSS,

              Plaintiff

-against-

THE CITY OF NEW YORK, SERGEANT
WONG, Tax ID 927821  (Shield #
Unknown, 30th Pct.), DEPUTY INSPECTOR
PETER BARTOSZEK, Commanding Officer,
79th Precinct, SERGEANT O'CONNOR,
Integrity Control Officer, LIEUTENANT.
DeMAIO, 79th Precinct,

              Defendants
-------------------------------------------------X     **AMENDED COMPLAINT**

      Plaintiff, JEFFREY STRUGSS, by his attorneys, Law Offices of K.C. Okoli, P.C., complaining of the defendants, alleges as follows:

## JURISDICTION AND VENUE

    1.    Jurisdiction is founded upon the existence of a Federal Question.

    2.    This is an action for injunctive relief and money damages.  This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., 42 U.S.C. §§1981, 1983 and 1985.

    3.    The jurisdiction of the Court is invoked to secure the protection and redress the deprivation of rights guaranteed to the plaintiff under the First, Fourth, Eight and Fourteenth Amendments to the Constitution of the United States.

    4.    The jurisdiction of the Court over these claims is founded on 28 U.S.C. §§1331 and 1343.

5. The Court has supplemental jurisdiction over the related causes of action asserted under the Administrative Code of the City of New York, §8-107(1), (7) and (13).

6. Venue is proper in this district based upon the fact that a substantial part of the events and incidents which give rise to the plaintiff's claims occurred within the district.

## PARTIES

7. Plaintiff is an African American male who is employed in the New York City Police Department ("NYPD").

8. Plaintiff began his career as a police officer with the NYPD on or about July 1, 1998.

9. At all times material to this action, plaintiff was a resident of Richmond County, City and State of New York.

10. Upon information and belief, at all times material to this action, the City of New York ("City") is a municipal corporation organized and existing under and by virtue of the laws of the State of New York.

11. The City maintains the NYPD, as a police department and is the employer of the law enforcement officers within the NYPD.

12. At all times material to this action, defendant Sergeant Wong ("Wong") was a police sergeant within the NYPD assigned to the 30th Precinct.

13. In May/June 2012, Deputy Inspector Peter Bartoszek ("Bartoszek") was the Commanding Officer of the 79th Precinct where plaintiff was assigned as a police officer.

14. In May/June 2012, Sergeant O'CONNOR ("O'CONNOR") was the Integrity Control Officer ("ICO") whose responsibility, upon information and belief, extended to the investigation of such incidents relating to the integrity of members of the NYPD including such matters as to who placed the "arrest evidence" in this action under the plaintiff's locker at the 79th Precinct.

15. In May/June 2012, Lieutenant DeMaio ("DeMaio"), was the supervisory officer responsible for integrity control at the 79th Precinct who, upon information and belief, was the immediate supervisor of O'CONNOR.

## BACKGROUND INFORMATION

16. Beginning in or about 2002 to the present time, plaintiff has had issues with one Jeanine Crawford, the mother of plaintiff's daughter, Joya.

17. The issues which plaintiff has with Ms. Crawford relate principally to child custody, child support and visitation issues, among others.

18. The defendants are aware of the ongoing issues concerning plaintiff and Ms. Crawford.

19. Complaints have been filed at police precincts in New York City by both plaintiff and Ms. Crawford concerning issues relating to the Joya; and transfer of custody of Joya had taken place at NYPD police precincts between plaintiff and Ms. Crawford.

20. Many documents have been created and/or generated by the defendants concerning the relationship between plaintiff, Ms. Crawford and their daughter, Joya.

21. In connection with plaintiff's issues with Ms. Crawford, plaintiff had filed numerous complaints of criminal wrongdoing against certain officials of the Family Court, New York State DCSE and New York Child Support Office in New York City from 2002 to 2012.

22. Plaintiff had also complained about the conduct of some members of the NYPD regarding their treatment of plaintiff, especially as it relates to their handling of issues between plaintiff and Ms. Crawford.

23. In his capacity as a United States citizen, plaintiff has the constitutional right to file and make the aforesaid complaints against the aforesaid officials and individuals.

24. In December 2002, plaintiff and his then fiancée went to the 32nd Precinct in connection with the transfer of plaintiff's daughter, Joya, for visitation in accordance with a

court order.

25. While within the premises of the 32nd Precinct, Ms. Crawford and others assaulted plaintiff's then fiancée, and when plaintiff demanded action from the officers at the precinct for the outrage, plaintiff and his fiancée were threatened, assaulted and detained by certain police officers at the 32nd Precinct.

26. Sometime in 2003, plaintiff lost ten (10) vacation days after plaintiff was tried at a conducted by the NYPD in connection with plaintiff's role in the service of court process upon Ms. Crawford when plaintiff discovered that, instead of using the child care money paid to her by plaintiff for a child care provider, as ordered by the Family Court, Ms. Crawford was using said money for herself.

27. In 2004, plaintiff and his wife commenced a lawsuit in the United States District Court for the Southern District of New York, against the City and the police officers who were involved in the December 2002 incident against plaintiff at the 32nd Precinct. That lawsuit was *Struggs v. City of New York,* 04 CV-2288.

28. In 2004, while the aforesaid lawsuit was pending and plaintiff was still protesting the conduct of officials of the Family Court, the NYPD (Manhattan North) began investigating plaintiff for various incidents, some of which were very minor and petty.

29. During the aforesaid investigation, one Sergeant Ferrina told plaintiff that if plaintiff continued to make domestic incident complaints against Ms. Crawford, plaintiff could be in a lot of trouble. Plaintiff considered Sergeant Ferrina's statement an act of intimidation and retaliation for plaintiff's expression of his rights under the First Amendment.

30. Subsequently, plaintiff and his wife discontinued *Struggs v. City of New York,* 04 CV-2288, with prejudice.

31. In 2008, plaintiff continued to file numerous complaints with New York City, New York State and federal agencies with regard to what plaintiff believed to be the corrupt acts and practices of officials of the Manhattan Family Court, NYS DCSE and NYS Child Support

Office.

32. Upon information and belief, certain members of the NYPD were favorably disposed to the mother of Ms. Crawford, and were in contact with the agencies and individuals against whom plaintiff was filing the aforesaid complaints.

33. In or about April 2008, one Sergeant George Ruppel, former Integrity Control Officer ("ICO") at the 79th Precinct, informed plaintiff that letters which plaintiff wrote got people in trouble and upset some people. Plaintiff believes that Sergeant Ruppel was referring to the aforesaid complaints by the plaintiff as well as some internal complaints which plaintiff filed with the NYPD concerning his treatment..

34. On or about September 5, 2008, plaintiff's Commanding Officer at the 79th Precinct, Deputy Inspector Donald Lyons, made reference to domestic incident complaints filed in August 2008 by the plaintiff against Ms. Crawford and some officials of the Manhattan Family Court.

35. The reference by Deputy Inspector Lyons to these complaints, which were not filed against anyone at the NYPD, and which plaintiff never made available to Deputy Inspector Lyons, made plaintiff feel intimidated and very anxious for his job as a police officer.

36. Said reference by Deputy Inspector Lyons also confirmed to plaintiff what plaintiff had always believed i.e. the City and State officials against who plaintiff was filing these complaints were in constant communication with plaintiff's superiors at NYPD, and were using plaintiff's superiors to retaliate against plaintiff for exercising his First Amendment rights.

## MATERIAL ALLEGATIONS

37. Between 2005 and 2010, plaintiff was subjected to more sever discipline than usual including being disciplined for failing to include the area code of his telephone number on an official document.

38. Plaintiff believes that these acts were done to intimidate plaintiff and cause

5

plaintiff to refrain from pursuing any claims against Ms. Crawford, and plaintiff in fact was in fact intimidated and considered these acts as continuing retaliation against plaintiff for exercising his First Amendment rights.

39. Defendants by themselves and with others unknown, have continued their acts of retaliation and intimidation of the plaintiff to this day.

40. On or about April 16, 2010, Wong prepared a Domestic Incident Report ("DIR") concerning the plaintiff in which Wong falsified facts against plaintiff. Said false DIR report is directly and partly responsible for some serious problems which plaintiff has had since 2010.

41. These problems include but are not limited to the fact that plaintiff has been prevented from seeing his daughter, Joya, since 2010, in clear violation of court orders, and has lost thousands of dollars in connection with the custody battle with Ms. Crawford.

42. In or about April 2012, plaintiff drove his wife's car to work at the 79th Precinct, and plaintiff left work on the day in question, plaintiff discovered that seven (7) screws had been driven into the tires of his wife's vehicle.

43. Plaintiff believes that the screws were driven into the car tires while the car was parked at the parking lot where police officers normally parked their cars when on duty at the 79th Precinct.

44. Plaintiff further believes that only a police officer or officers would have had the courage to go into the parking lot and drive that many screws into the tires of his vehicle without fear of being discovered.

45., On or about April 4, 2012, plaintiff filed a complaint of wrongdoing against the New York State Office of Temporary and Disability Assistance with the United States Department of Justice ("DOJ").

46. Plaintiff believes that he has a First Amendment constitutional right to file these complaints.

47. On or about May 6, 2012, "arrest evidence", including a firearm, a cell phone and

other incriminating evidence were planted under plaintiff's locker at the 79th Precinct by unknown persons. Prior to the discovery of these items, plaintiff had never possessed these items nor had plaintiff ever seen them.

48. Some officers at the 79th Precinct witnessed the discovery of these items, and plaintiff duly reported the discovery up the chain of command.

49. Only employees assigned to the 79th Precinct have access to the plaintiff's locker area; it is obvious that the person(s) who planted the aforesaid incriminating "arrest evidence" are not civilians but NYPD police officers.

50. Up until this day, plaintiff is not aware of any serious investigative actions taken by the defendants to discover the person or persons who planted these incriminating items under plaintiff's locker.

51. Plaintiff believes that the foregoing actions and inaction by the defendants were retaliatory acts aimed at intimidating plaintiff and falsely incriminating plaintiff in criminal wrongdoing due to plaintiff's continuing participation in protected activities.

52. Upon information and belief, the defendants are either the persons who planted these incriminating items or encouraged those who did and are now protecting the perpetrators.

53. Had the perpetrators of this vile act succeeded in falsely incriminating plaintiff with the "arrest evidence", that could have resulted in plaintiff's summary dismissal from the NYPD.

54. By their inaction over the "arrest evidence", defendants have indeed succeeded in intimidating plaintiff and causing plaintiff severe anxiety and emotional distress over his job security.

55. Plaintiff is now very suspicious of everyone around him and very anxious at all time, especially at work not knowing who to trust.

56. Plaintiff's job as a police officer requires him to trust his professional colleagues, something which is becoming increasingly very difficult for him to do in light of the hostile

work environment and atmosphere which the defendants have created and fostered for the plaintiff.

be subjected to this additional layer of anxiety.

57. Upon information and belief, no proper investigation was conducted by the defendants to determine the persons who attempted to falsely incriminate plaintiff and get plaintiff dismissed from NYPD by planting the "arrest evidence" under the plaintiff's locker.

58. Upon information and belief, a proper basic investigation would included testing the "arrest evidence" for fingerprints, review of any surveillance photos available within the NYPD, checking the owner or user of the cell phone, questioning of all officers who had access to plaintiff's locker area between the last time plaintiff was at work and when the items were discovered.

59. The aforesaid failure in this case is consistent with the pattern and practice of the NYPD when ranking officials choose to protect or shield police officers who engage in wrongdoing from facing punishment or discipline.

60. A police personnel with knowledge told plaintiff that the plaintiff's complaint concerning the "arrest evidence" was not going anywhere which plaintiff understood to mean that the matter would not be investigated.

61. On or about May 10, 2012, plaintiff filed a complaint for retaliation with the United States Equal Employment Opportunity Commission ("EEOC").

62. On or about May 23, 2012, plaintiff filed a complaint with the U.S. Department of Justice ("DOJ") in which plaintiff sought, among other reliefs, the investigation of this incident and the New York City Police Department for wrongdoing.

63. On or about June 5, 2012, plaintiff found one Police Officer Salcedo attempting to improperly revoucher property using an old original voucher number, under the name and ID of the plaintiff.

64. Plaintiff protested said attempt by Officer Salcedo and prevented her from doing

8

so. Plaintiff believes that Officer Salcedo's conduct is part of the continuing attempt to falsely incriminate plaintiff in wrongdoing.

65. While plaintiff has not received any final response from the DOJ, plaintiff has received from the EEOC, a notice of right to sue dated June 6, 2012.

66. By reason of the foregoing, plaintiff has exhausted his administrative remedies.

67. At all times mentioned herein, the defendants were acting under color of law and in their capacities of law enforcement officials; the individual defendants were also acting within the scope of their employment with the NYPD.

### CLAIM I: FEDERAL/CITY HOSTILE WORK ENVIRONMENT

68. Plaintiff re-alleges each and every allegation from "1" through "67" as if same is specifically set forth herein.

69. Since 2002 to the present, defendants have evinced a pattern of not treating anything concerning plaintiff seriously unless it involved some punishment or discipline for the plaintiff.

70. Both by speech and conduct, since 2002, and more recently, the incident of the May/June 2012 in which "arrest evidence" was planted under plaintiff's locker and the defendants failed to take any serious steps to discover the perpetrators, the defendants created a hostile work environment for the plaintiff; defendants created a reasonable fear in plaintiff that he could lose his job as a police officer in disgrace and also lose the job benefits, based upon falsified evidence.

71. Defendants have attempted to, or in fact disciplined plaintiff over the most trivial things as a pretext for racial harassment and part of the aforesaid hostile work environment.

72. This most recent incidents have caused plaintiff serious anxiety as to who might want to damage plaintiff. Specifically: a) NYPD employees planted "arrest evidence" under plaintiff's locker to unjustly incriminate him and cause him to lose his career as a police officer;

b) screws were driven into a vehicle driven by plaintiff which could result in a serious accident and even fatality for the plaintiff, under circumstances clearly showing that employees of the NYPD were involved; c) defendants have not taken any serious steps to address any of these matters which is now causing plaintiff sleepless nights.

73. Plaintiff is increasingly being isolated by other police officers because of his complaints, and is being made to feel like he had done something wrong by bringing these matters to the attention of those who should know and take action.

74. No police officer should be made to face the kind of work situation which plaintiff is facing at his workplace.

75. Defendants have singled out plaintiff for the aforesaid treatment which is not meted similarly situated police officers who are not African American.

76. Plaintiff remains fearful that defendants and their enablers and unknown co-conspirators may still succeed in destroying plaintiff's career as a police officer.

77. By reason of the foregoing, plaintiff has suffered loss and damage.

## CLAIM II: FIRST AMENDMENT CONTINUING RETALIATION

78. Plaintiff re-alleges each and every allegation from "1" through "77" as if same is specifically set forth herein.

79. Since plaintiff began filing complaints of corruption and improper conduct against officials of various City and State agencies in or about 2002, defendants began retaliating against plaintiff, and the retaliation worsened over the years to the present time.

80. This retaliation took an even more sinister turn when plaintiff filed complaints with DOJ and EEOC, in that defendants planted "arrest evidence" under plaintiff's locker for the obvious purpose of falsely incriminating plaintiff in criminal wrongdoing which potentially

could lead to the destruction of plaintiff's career with the NYPD.

81. The failure to properly investigate the "arrest evidence" incident and the recent "screws in tire" incident has caused plaintiff to fear not only for his job but also for his personal safety.

82. By reason of the foregoing, plaintiff has been subjected to unlawful retaliation and has suffered loss and damage.

### CLAIM III: TITLE VII, 42 USC §§1981, 1983 & 1985 AND NYC HUMAN RIGHTS LAW  RETALIATION

83. Plaintiff re-alleges each and every allegation from  "1" through "82" as if same is specifically set forth herein.

85. Defendants have together and with others unknown conspired to deprive plaintiff of his civil rights by planting evidence to falsely incriminate plaintiff and cause plaintiff to lose his job as a police officer.

86. When the discovery of this "arrest evidence" foiled the plan to cause plaintiff to lose his job and career, the defendants did absolutely nothing to reassure plaintiff and identify the culprits.

87. By planting an "arrest evidence" under plaintiff's locker approximately one month after plaintiff filed a complaint of wrongdoing with the United States Department of Justice against a State agency, defendants retaliated against plaintiff for engaging in protected activity.

88. By reason of the foregoing, plaintiff has suffered loss and damage.

### PRAYER FOR RELIEF

**WHEREFORE,** plaintiff prays for judgment against the defendants as follows:

a) On Claim I, Five Million Dollars ($5,000,000.00), including compensation for mental anguish;

b) On Claim II, Five Million Dollars ($5,000,000.00), including compensation for mental anguish;

c) On Claim III, Five Million Dollars ($5,000.000.00), including compensation for mental anguish;

d) Punitive damages against the individual defendants;

e) Reasonable attorneys' fees;

f) Costs;

g) Other or further relief as this Court shall deem just proper and equitable.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all issues triable by jury.

Dated: New York, New York
January 18, 2013

>LAW OFFICES OF K.C. OKOLI, PC
>Attorneys for Plaintiff
>JEFFREY STRUGSS
>330 Seventh Avenue
>15th Floor
>New York, N.Y. 10001
>(212) 564-8152
>
>By:  /s/ K.C. Okoli
>     K.C. OKOLI (KO7222)

TO:

MICHAEL A. CARDOZO
NYC Law Department
100 Church Street
New York, New York 10007
BY: SHAKERA KHANDAKAR
Assistant Corporation Counsel